# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08CV136-C

| | |
|---|---|
| **CENTRAL TRANSPORT INTERNATIONAL, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**GENERAL ELECTRIC COMPANY, and SABIC INNOVATIVE PLASTICS US LLC,** )<br>)<br>)<br>)<br>**Defendants.** )<br>) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on the "Defendants' Joint Motion to Dismiss Counts I and III of the Amended Complaint" (document #11) and ". . . Memorandum of Law in Support . . ." (document #12), both filed May 9, 2008. The Plaintiff responded with its ". . . Opposition to Defendants' Motion to Dismiss Counts I and III of the Amended Complaint and, in the Alternative, Motion for Leave to File a Second Amended Complaint" (document #15) and "Memorandum of Law in Support . . ." (document #16), both filed May 27, 2008. On June 6, 2008, the Defendants filed their ". . . Reply . . ." (document #22).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Defendants' Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendants' Motion to Dismiss be <u>granted</u>, and will order that the Plaintiff's Alternative Motion for Leave to File a Second Amended Complaint be <u>denied</u>, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action seeks damages for negligent misrepresentation, breach of contract, unjust enrichment, and seeks a declaration that the Plaintiff is not obligated to make any outstanding payments for freight loss and damage claims made by the Defendants. The Plaintiff is a motor carrier engaged in the shipping of goods for hire.

In 2001 and again in 2003, Plaintiff Central Transportation International, Inc. entered into a contract known as a Less-Than-Truckload Transportation Contract ("LTL Contract") pursuant to which the Plaintiff agreed to transport freight on behalf of General Electric Company ("GE") and SABIC Innovative Plastics US LLC (collectively "Defendants").[1] The LTL Contract incorporated the terms of the National Motor Freight Classification ("NMFC"), a widely accepted industry standard addressing the characteristics of certain types of freight and detailing the packaging requirements for tractor trailer transportation.

Between 2002 and 2007, the Plaintiff alleges that it transported "thousands of shipments" of resin pellets on behalf of the Defendants, and that between 2002 and 2008 the Defendants filed claims with the Plaintiff for reimbursement for loss or damage to the goods transported, as the contract required the Plaintiff to reimburse Defendants for certain damage to the freight occurring while in its custody, possession, or control. Moreover, the Plaintiff alleges that it paid in excess of $1.9 million to the Defendants for claims submitted pursuant to this contract.

The present dispute arose when the Plaintiff discovered that the Defendants had failed to comply with the packaging requirements set forth in the NMFC and, accordingly, the containers and

---

[1] The 2001 and 2003 contracts were initially only between Plaintiff and General Electric Company, including one of its divisions, General Electric Plastics. However, in 2007, GE divested its GE Plastics Division, and thereafter, the parties amended their 2003 contract to substitute Global Shippers Association for GE as a party to the contract. Defendant SABIC Innovative Plastics is a member of Global Shippers Association.

2

pallets utilized by the Defendants for transportation of the Freight were inadequate for LTL tractor trailer transportation. The Plaintiffs allege that the Defendants knew, or should have known, that their packaging method did not comply with the requirements set forth in the NMFC, and the damage to the freight that occurred under its control was the result of the Defendants' inadequate packaging. Finally, the Plaintiff contends that had the Defendants disclosed that they did not intend to employ adequate packaging (i.e. packaging that met NMFC standards), it would not have agreed to the liability provisions set forth in the LTL Contract.

On April 15, 2007, the Plaintiff filed an Amended Complaint against the Defendants, alleging causes of action for Negligent Misrepresentation (Count I), Breach of Contract (Count II), Unjust Enrichment (Count III), and Declaratory Relief (Count IV). On May 9, 2008, the Defendants filed an Answer to Counts II and IV and a Motion to Dismiss Counts I and III. The Plaintiff does not oppose the subject Motion insofar as it seeks dismissal of Count III (unjust enrichment), but argues that the Court should deny the Motion to Dismiss Count I (negligent misrepresentation).

## II. MOTION TO DISMISS

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain

3

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the United States Supreme Court's recent examination of this standard, it explained:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . . And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

See Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (May 21, 2007) (internal citations omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### B. Choice of Law

Before proceeding to the parties' substantive arguments, the proper choice of law must be determined. This action is before the Court based on the diversity of the parties. The Amended Complaint states that venue is proper in the Western District of North Carolina because "a substantial part of the events giving rise to the claim occurred in this district."

Although the contract between the parties apparently provides for New York law to govern contract interpretation (the parties have not yet provided the Court with a copy of the contract), claims sounding in tort are not subject to contractual choice of law provisions. See Itco Corp. v.

4

Michelin Tire Corp., 722 F.2d 42, 49 n.11 (4th Cir. 1983).

The Defendants briefly argue that North Carolina law applies to the tort claims because that is the law of the forum state. United Dominion Industries v. Overhead Door Corp., 762 F. Supp. 126, 127-30 (W.D.N.C. 1991). The Plaintiff argues, in a footnote, that Michigan law should apply because there "is no indication that the payments which Central now seeks to recover in this action were made from anywhere other than Central's principal place of business," in Michigan. It is true that North Carolina "courts considering tort claims have traditionally applied the law of the state where the injuries were sustained." See North Carolina Mut. Life Ins. Co. v. McKinley Financial Service, Inc., 386 F. Supp. 2d 648, 658 (M.D.N.C. 2005).

The Plaintiff's very brief argument that there is no indication that the payments at issue were made from anywhere but Michigan does not override its earlier statement in the Amended Complaint that "a substantial part of the events giving rise to the claim occurred in this district." The Plaintiff complains as much about the alleged faulty packaging of the products as it does the payment on the claims for damage made by the Defendants. In addition, the location where the damage to the products occurred is unknown at this time. With the limited information before the Court, the Plaintiff's declaration in its Amended Complaint – that a substantial part of the events giving rise to this claim occurred in this state – is the most reliable source for the Court to base its conclusion that North Carolina law applies to the subject Motion.

C. **Negligent Misrepresentation Claim**

Well established in both North Carolina and Fourth Circuit common law is the economic loss doctrine, which prohibits recovery for purely economic loss in tort, when the subject claims are governed by contract. See Strum v. Exxon Co., 15 F.3d 327, 330 (4th Cir. 1994) (discussing

different goals of tort and contract law); 2000 Watermark Ass'n, Inc., v. Celotex Corp., 784 F.2d 1183, 1186 (4th Cir. 1986) (discussing differences between tort and contract law); and Lord v. Customized Consulting Specialty, Inc., 182 N.C. App. 635, 639, 643 S.E.2d 28, 30 (2007) ("the economic loss rule prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law"). To pursue a tort claim along with a breach of contract claim, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362 (W.D.N.C. 1997). Accord Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (under North Carolina law, "parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract . . ."), quoting Branch Banking and Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E. 2d 694, 699 (1992).

Applying this rule, the Court finds that the Defendant is seeking an exclusively economic recovery, as it has petitioned for a recovery of "$1.9 million paid to Defendants [by Plaintiff]." Moreover, the record indicates that all alleged claims and damages arose out of the parties' contractual relationship. The entire basis of the Plaintiff's claim is that the Defendants failed to comply with the incorporated terms of the contract. The Plaintiff seeks reimbursement of funds it paid in response to damages claims by the Defendants arguing that the causation of the damage was the Defendants' variance from the contractual packaging requirements. This is a paradigmatic contract action and its remedy should be sought in contract, not tort. Accordingly, the undersigned will respectfully recommend that the Plaintiff's negligent misrepresentation claim be dismissed.

The Defendants have also argued that this claim should be dismissed because it fails to meet the heightened pleading requirements for fraud, which they allege are also applicable to negligent

6

misrepresentation. In response to this argument, the Plaintiff first argues that the heightened pleading requirements are not applicable to negligent misrepresentation, but also makes an alternative request to amend its Amended Complaint to comply with the pleading requirements if the Court found them applicable.

In this case, there is no reason for the Court to reach the Defendants' alternative argument because the Plaintiff's negligent misrepresentation claim clearly cannot survive the economic loss doctrine. Accordingly, the undersigned will **deny** the Plaintiff's request to amend its Amended Complaint as it would be futile in light of the above discussed doctrine.[2]

### III. ORDER

**FOR THE FOREGOING REASONS**, the Plaintiff's Alternative "Motion for Leave to File a Second Amended Complaint" (document #15) is **DENIED**.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "Defendants' Joint Motion to Dismiss . . ." (document #11) be **GRANTED** as to the Plaintiff's negligent misrepresentation and unjust enrichment claims.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this

---

[2]The Plaintiff chose not to respond to the Defendants' economic loss doctrine, and instead included the following in its brief: "Defendants also argue that Count I (negligent misrepresentation) is barred by the economic loss rule as recognized by courts applying North Carolina law. In the event that this Honorable Court grants Central leave to file a Second Amended Complaint, this second argument of Defendants cannot be properly addressed until the Second Amended Complaint setting forth the facts supporting a claim for negligent misrepresentation with particularity (sic)."

Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

                                           Signed: June 27, 2008

*Carl Horn, III*

                                           Carl Horn, III
                                           United States Magistrate Judge