# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08CV136-C

| | |
|---|---|
| CENTRAL TRANSPORT INTERNATIONAL, INC., <br>                 Plaintiff, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY and <br> SABIC INNOVATIVE PLASTICS US LLC <br><br>                 Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on "Defendants' Motion to Bifurcate Discovery [including authorities and argument]" (document #31) filed September 19, 2008; and the "Plaintiff's Brief in Opposition ..." (document #32) filed September 22, 2008. On September 26, 2008, the Defendants filed their "Reply ..." (document #33). Although the parties initially requested a hearing on this Motion, after reviewing the briefs, and consulting with the chambers of the District Judge to whom this case is assigned (the Honorable Robert J. Conrad, Jr.), the undersigned has determined that a hearing is unnecessary.

The instant motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B), and is now ripe for disposition.

Having fully considered the arguments of counsel, the record, and the applicable authority, the undersigned will <u>deny</u> the Defendants' Motion to Bifurcate Discovery.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is an action seeking damages for breach of contract. In 2001 and again in 2003, Plaintiff Central Transportation International, Inc. entered into a contract known as a Less-Than-Truckload

Transportation Contract ("LTL Contract") pursuant to which the Plaintiff agreed to transport freight on behalf of General Electric Company ("GE") and SABIC Innovative Plastics US LLC (collectively "Defendants").[1]

Between 2002 and 2007, the Plaintiff alleges that it transported "thousands of shipments" of resin pellets on behalf of the Defendants, and that between 2002 and 2008 the Defendants filed claims with the Plaintiff for reimbursement for loss or damage to the goods transported, as the contract required the Plaintiff to reimburse Defendants for certain damage to the freight occurring while in its custody, possession, or control. Moreover, the Plaintiff alleges that it paid in excess of $1.9 million to the Defendants for claims submitted pursuant to this contract.

The present dispute arose when the Plaintiff allegedly discovered that the Defendants had failed to properly package the resin pellets, resulting in the damage. Specifically, the Plaintiff contends that the Defendants failed to properly package the pellets as stated in the Uniform Straight Bill of Lading that accompanied each shipment and as required by the packaging requirements set forth in the National Motor Freight Classification ("NMFC"), a widely-accepted industry standard addressing the characteristics of certain types of freight and detailing the packaging requirements for tractor trailer transportation. The Plaintiff contends that the LTL Contract incorporated the terms of the NMFC. Morever, the Plaintiff alleges that the Defendants knew, or should have known, that their packaging method was inadequate and that the damage to the freight that occurred under the Plaintiff's control was the result of the Defendants' inadequate packaging. Finally, the Plaintiff contends that had the Defendants disclosed that they did not intend to employ adequate packaging,

---

[1] The 2001 and 2003 contracts were initially only between Plaintiff and General Electric Company, including one of its divisions, General Electric Plastics. However, in 2007, GE divested its GE Plastics Division, and thereafter, the parties amended their 2003 contract to substitute Global Shippers Association for GE as a party to the contract. Defendant SABIC Innovative Plastics is a member of Global Shippers Association.

2

the Plaintiff would not have agreed to the liability provisions set forth in the LTL Contract.

On March 27, 2008, the Plaintiff filed a Complaint against the Defendants, which as amended, alleged causes of action for Negligent Misrepresentation (Count I), Breach of Contract (Count II), Unjust Enrichment (Count III), and Declaratory Relief (Count IV).

On May 9, 2008, the Defendants filed an Answer to Counts II and IV, a Motion to Dismiss Counts I and III, and a Counterclaim for an additional $366,375.26 in damages to additional resin pellet shipments.

On June 27, 2008, the undersigned respectfully recommended that the Defendants' Motion to Dismiss be granted. See "Memorandum and Recommendation and Order" (document #23). Neither party objected to the aforementioned Memorandum and Recommendation and Order, which was subsequently adopted by Judge Conrad. See "Order" entered July 23, 2008 (document #29) (adopting Memorandum and Recommendation and Order, granting Motion to Dismiss, dismissing Counts I and III of Amended Complaint).

On September 19, 2008, the Defendants filed the subject Motion to Bifurcate Discovery contending that initially, discovery should proceed only as to the issue of whether the LTL Contract "incorporates the NMFC standards with respect to packaging," which the Defendants characterize as a "critical and potentially dispositive issue." "Motion to Bifurcate" at 3 (document #31). The Defendants contend that bifurcation is necessary in order to avoid "unnecessary time and expense ... in exchanging discovery regarding the numerous shipments that were the subject of the damage claims previously paid by Plaintiff ... which may ultimately be moot if" the NMFC issue is resolved against the Plaintiff. Id. at 4. In other words, the Defendants' Motion is predicated on the premise that if they prevail on the NMFC issue, there will be no remaining need for discovery as to whether

they properly packaged the resin pellet shipments.

In its Brief in Opposition, the Plaintiff points out that the packaging standards set forth in the NMFC are not the only basis for establishing the Defendants' liability, that is, that the Defendants had a duty to use proper packaging as stated in the Uniform Straight Bill of Lading, as well as a general common law duty to package the freight properly. Additionally, the Plaintiff contends that regardless of the merits of its claims against the Defendants, it is entitled to conduct discovery concerning the Defendants' Counterclaim and that there will be significant overlap of discovery concerning the applicability of the NMFC standards, the shipping requirements stated in the bills of lading, and the Defendants' Counterclaim.

The Defendants' Motion has been fully briefed and is, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

As the parties agree, whether to order bifurcation of claims/issues, during discovery or at trial, rests squarely within the broad discretion of the District Court. See Fed. R. Civ. P. 42(b); Maher v. Continental Cas. Co., 76 F.3d 535, 545 (4th Cir. 1996) (affirming bifurcation of claims and stay of discovery as to secondary claims); In re Hutchinson, 5 F.3d 750, 758 (4th Cir. 1993) (decisions on bifurcation reviewed for abuse of discretion); and Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir. 1993) (same).

Morever, bifurcation of discovery is the exception, rather than rule, and it is clear that in most instances, regular – that is, unbifurcated – discovery is more efficient. Accord Belk, Inc. v. Meyer Corp., 2008 WL 2704792, at 2 (W.D.N.C. July 07, 2008) ("Motion For Bifurcation Of Discovery" denied in favor of a "regular discovery period that would allow for a more efficient process"); Carver v. Velocity Express Corp., 2008 WL 2079819, at 2 (W.D.N.C. May 15, 2008) (concluding that

4

bifurcated discovery would be less efficient); and Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc., 403 F.Supp.2d 451, 461 (D. Md. 2005) (bifurcation of discovery "would not further judicial economy").

Such is certainly the situation in the present case. Rather than establish, as the Defendants contend, that bifurcated discovery would promote efficiency, an examination of the record establishes that limiting discovery initially to the NMFC issue will result ultimately in duplicative discovery that will waste time, money and scarce judicial resources. Indeed, even assuming arguendo that the NMFC issue is resolved in the Defendants' favor, there will be little, if any, reduction in the scope of discovery related to the packaging of and damage to the resin pellet shipments. In other words, even if the NMFC packaging requirements are removed from this case, the issue of whether the shipments were packaged properly will remain a central issue – material both to the Plaintiff's breach of contract claim and the Defendants' Counterclaim.

### III. ORDER

**FOR THE FOREGOING REASONS**, **IT IS HEREBY ORDERED:**

1. The "Defendants' Motion to Bifurcate Discovery" (document #31) is **DENIED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED**.

Signed: September 30, 2008

Carl Horn, III
United States Magistrate Judge